Thomas PASSARGE, Plaintiff,

v.

SHAREFAX CREDIT UNION,
et al., Defendants.

No. C–1–01–239.

United States District Court,
S.D. Ohio,
Western Division.

July 23, 2003.

822

Martin McHenry, Havercamp Brinker Rebold & Riehl Co. LPA, Cincinnati, OH, for Plaintiff.

Michael Samuel Glassman, Trina M. Walton, Dinsmore & Shohl-1, Cincinnati, OH, for Defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendants' Motion for Summary Judgment (doc. 25), Plaintiff's Memorandum in Opposition (doc. 28), Plaintiff's Addendum/Supplement (doc. 29), Plaintiff's Notice of Filing of Affidavit (doc. 30), and Defendants' Reply Brief (doc. 32).

The following facts have been drawn from the pleadings and motions docketed in this case. On October 27, 2000, Plaintiff was terminated from his position as the president and chief executive officer of Defendant Sharefax Credit Union (hereinafter the "Credit Union") (doc. 12). Plaintiff alleges that he was fired without warning, he was a good worker, and his performance evaluations were positive (doc. 28). Plaintiff further alleges that when he inquired about his termination Defendants told him they decided the Credit Union needed change, and that as early as 1997 Defendants instructed him to train a younger replacement because he could retire or be forced to retire because of his heart

condition (*Id.*). Plaintiff also alleges that Defendants constantly pressured him into retirement, while expressing the need for younger employees to lead the Credit Union into the new millennium (*Id.*) Plaintiff's Complaint states that the Credit Union terminated him due to his age and disability in violation of federal and state law (*Id.*). Plaintiff specifically alleges violations of 29 U.S.C. §§ 621 *et seq.*, (Section 510 of Employee Retirement Income Security Act, hereinafter "ERISA"); the age and disability discrimination provisions of Ohio Revised Code § 4112.99; the public policy of Ohio prohibiting age and disability discrimination; 29 U.S.C. §§ 621 *et seq.*, the Age Discrimination in Employment Act (hereinafter, the "ADEA"), and 42 U.S.C. §§ 12101 *et seq.*, the Americans with Disabilities Act (hereinafter, "ADA") (*Id.*).

Defendants filed their Motion for Summary Judgment on March 23, 2003 (doc. 25). Defendants posit that they terminated Plaintiff not because of his age or disability, but because of a "series of Plaintiff's serious misrepresentations, mismanagement, fraud, half-truths, and blatant violations of the board directives, which led the board to lose confidence in his ability" (*Id.*). Defendants allege that the behavior of Plaintiff between September 1999 and October 2000 became increasingly detrimental to Sharefax (*Id.*). Defendants allege that during this one-year period several events led to the Plaintiff's termination (*Id.*). Defendants allege that Plaintiff forged his wife's name on mortgage loan documents at the Credit Union and overpaid himself salary that was unapproved by the board (*Id.*). Defendants blame a significant decline in office morale at the Sharefax Main Office on Plaintiff's conduct (*Id.*). Defendants allege that Plaintiff's opposition and reaction to a non-fraternization policy led to this distrust in Plaintiff's professionalism and ethics (*Id.*). Defendants allege they pursued this policy because of one of Plaintiff's extramarital affairs involved one of his subordinates at Sharefax, Sandi Paul (*Id.*). Defendants further allege that Plaintiff misrepresented the situation involving him, Ms. Paul and their compliance with the new non-fraternization policy to the board of the Credit Union (*Id.*). Defendants claim these events led to the termination of Plaintiff, while the last straw was Plaintiff's inclusion in his travel expenses of costs to bring Ms. Paul along with him on a business trip (*Id.*). Defendants allege that after this event, they lost faith in Plaintiff's ability to run the company (*Id.*). Defendants assert that Plaintiff did not refute any of these arguments in his opposition (doc. 32). Defendants further allege that most of Plaintiff's accounts in his opposition "never occurred" and are attempts to "create an issue where none exists" (*Id.*).

In his response, Plaintiff abandoned his disability claims as well as his claims directed to Defendants' individual liability under the ADEA (doc. 28). Plaintiff argues under *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir.1994) he need not show age was the only factor in his termination (*Id.*). Plaintiff posits that a jury could infer age was one of the determining factors in his termination from evidence of pretext (*Id.*). Plaintiff argues comments that he was "an old fart" reflected a state of mind of the board members that constitutes strong circumstantial evidence of discrimination (*Id.*). Plaintiff also argues that the board members' silence in response to his query for a reason for his termination is evidence of pretext (*Id.*).

Defendants' Reply argues that Plaintiff's allegations are conclusory and insufficient to defeat their Motion for Summary Judgment (doc. 32). Defendants argue that the Credit Union board voted unanimously to

terminate Plaintiff's employment and sought advice from its independent auditing firm before doing so (*Id.*). Defendants argue that as for his age discrimination claims Plaintiff has the burden to show that their proffered reasons for his termination are false and discrimination is the real reason. Defendants argue Plaintiff has not done so, and that Plaintiff has not even addressed their concerns about his relationship with Sandi Paul and the conflicts of interest that such relationship engendered (*Id.*). For the same reasons, Defendants argue that Plaintiff's ERISA and public policy claims fail as a matter of law (*Id.*).

## ANALYSIS

### I. Summary Judgment Standard

The narrow question that this Court must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. 2548; *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 405 (6th Cir.1992); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see *Guarino,* 980 F.2d at 405.

As the Supreme Court stated in *Celotex,* the non-moving party must "designate" specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Guarino,* 980 F.2d at 405. Although the burden might not require the non-moving party to "designate" facts by citing page numbers, "'the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies.'" *Guarino,* 980 F.2d at 405 (quoting *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990)).

Summary judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations, however, are not sufficient to defeat a motion for summary judgment. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990). Furthermore, the fact that the non-moving party fails to respond does not lessen the burden on the moving party or the court to demonstrate that summary judgment is appropriate. *Guarino,* 980 F.2d at 410; *Carver v. Bunch,* 946 F.2d 451, 454–55 (6th Cir. 1991).

### II. Discussion

#### A. Plaintiff's Age Discrimination Claims

A plaintiff may establish a *prima facie* case of age discrimination through direct or indirect evidence. *Johnson v. Kroger*

Co., 319 F.3d 858, 865 (6th Cir.2003)[1]. In the absence of direct evidence, as in this case, Plaintiff must establish his *prima facie* case by introducing evidence that 1) he was a member of the protected class, 2) he was terminated, 3) he was qualified for the position, and 4) a substantially younger employee of similar qualifications was retained. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

 The *prima facie* case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't. Of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant remains silent in face of the presumption, in the absence of a genuine issue of material fact, Plaintiff would be entitled to summary judgment. The burden shifts to defendant, therefore, to rebut the presumption of discrimination by producing evidence that the plaintiff was terminated, or someone else was preferred, for a legitimate, nondiscriminatory reason. *Id.* The defendant need not persuade the court that it was actually motivated by the proffered reasons. *Id.citing Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978).

 It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. *Id.* To accomplish this, the de-fendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. *Id.* at 255, 101 S.Ct. 1089. The explanation provided must be legally sufficient to justify a judgment for the defendant. *Id.* If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted, and the factual inquiry proceeds to a new level of specificity. *Id.* Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's *prima facie* case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. *Id.* at 255-56. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions. *Id.* at 256.

 The plaintiff retains the burden of persuasion. *Id.* He now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. *Id.* This burden now merges with the ultimate burden of persuading the court that he has been the victim of intentional discrimination. *Id.* He may succeed in this by showing both that defendant's proffered reasons are factually untrue, and that discrimination was the real reason for the adverse employment action. *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 470 (6th Cir.2002), *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff can prove pretext by showing that 1)the articulated reasons are not supported by the facts as revealed by the evidence; 2) the articulated reason or reasons did not actually motivate the termination; or 3) the articulated reasons were

1. Plaintiff's state and federal age discrimination claims may both be interpreted under federal case law interpreting the ADEA. *Erce-* *govich v. Goodyear,* 154 F.3d 344, 357–58 (6th Cir.1998). The Court, however, refrains from ruling on Plaintiff's state law claims.

insufficient to warrant the termination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

In this case, the Court finds that Plaintiff has established he was 57 years old at the time of his termination, he was qualified for the position, and he was replaced by someone ten years younger. As the *prima facie* requirement is not onerous, the Court finds in this case, Plaintiff has pleaded his *prima facie* case. *Cline v. Catholic Diocese*, 206 F.3d 651, 660 (6th Cir.2000). Although Defendants argue that Plaintiff insufficiently opposed their motion with conclusory allegations in his affidavit, they fail to note that they had an opportunity to cross-examine Plaintiff in deposition concerning the same allegations. Plaintiff did not merely oppose their Motion with statements made in his affidavit. As such, Plaintiff's assertion that Defendants considered him "an old fart" and that they needed to get younger people on board signals the existence of a genuine dispute as to the material fact of Defendants' frame of reference toward protected employees. It is inconsequential that Plaintiff's view of the facts is denied by all the board members. The credibility determination is not for the Court to decide in a motion for summary judgment.

Defendants therefore have the burden to produce a legitimate nondiscriminatory reason for their decision to terminate Plaintiff. In this case, Defendants recite a number of accounting irregularities, including that Plaintiff forged his wife's signature on a loan application (doc. 25). Defendants allege that although on December 13, 1999, Plaintiff received written warning stating "any similar or related actions by you in the future will result in the termination of your employment," Plaintiff continued to engage in inappropriate accounting activity (*Id.*). Defendants proffer evidence that this activity included a number of unauthorized overpayments in the form of overtime, prepaid vacation advances, and self-payment of a higher salary (*Id.*). In addition to these matters, all arguably similar actions to the improper loan application, Defendants allege that Plaintiff had a conflict of interest due to his relationship with Sandi Paul, who left employment with the Credit Union after she and Plaintiff became involved in a relationship (*Id.*). Ms. Paul had been subject to a probation agreement for improper financial activities related to her account (*Id.*). Defendants allege that Plaintiff's personal relationship with Ms. Paul affected both his judgment as chief executive officer and the morale of the employees in the office (*Id.*). Defendants state the last straw came when Plaintiff expensed to them seven days of expenses for a three-day conference in California, including the airfare and meal expenses, for Sandi Paul (*Id.*).

The Court finds that in light of the previous warning, a number of the above irregularities reported by Defendants could serve as a legitimate nondiscriminatory justification for the termination of Plaintiff's employment. Taken together, it appears that if the Defendants erred, it was perhaps in their benevolence toward Plaintiff.

In response to Defendants' legitimate, nondiscriminatory justification for his discharge, Plaintiff must provide facts showing that the proffered reasons are false and discrimination was the real reason. Plaintiff quibbles with Defendants' position on the Credit Union's anti-fraternization policy and their arguments that his use of an account for which Sandi Paul's thirteen-year-old son was the primary account holder was inappropriate. However, the Court finds that the bulk of Plaintiff's argument is a laundry list of excuses attempting to justify his accounting irregularities. Plaintiff attempts to shift the blame to his

subordinates, and not once in his Response addresses the conflict of interest inherent in his relationship with Sandi Paul. Plaintiff likewise provides no facts justifying his expensing to the Credit Union of Ms. Paul's travel and meal costs in California. Plaintiff merely reiterates that he has pleaded his *prima facie* case and repeats the statements in dispute that younger people were to lead the Credit Union into the new millenium and that he was "an old fart" (doc. 28).

 Plaintiff also implies that Defendants' silence at the time of his termination in response to his request for an explanation is evidence of pretext (*Id.*). Plaintiff cites to *Gallo v. John Powell Chevrolet, Inc.*, 765 F.Supp. 198 (M.D.Pa. 1991) for the proposition that such silence suggests the Defendants had no legitimate reason, and fabricated their justification after the fact (*Id.*). In *Gallo*, however, the Court found that the defendant's proffered justifications lacked merit. 765 F.Supp. 198, 210. The *Gallo* court also signaled that plaintiff's testimony, in contrast to defendant's, was found credible. *Id.* The Court finds that the facts of this case do not suggest the Defendants fabricated their reasons after their termination of Plaintiff. Defendants argue persuasively that they were not required by Ohio law to articulate a reason for Plaintiff's termination (doc. 32). Defendants' silence in this case does not indicate pretext.

Finally, the Court finds it appropriate to note Plaintiff's reliance on the theory that under *Cooley*, 25 F.3d 1325, he could prevail if a jury could find age was merely a factor among others in causing his dismissal (doc. 28). The procedural posture of *Cooley*, however, was different. 25 F.3d 1325. *Cooley* made it to trial and the cited portion pertains to jury instructions. *Id.* at 1333–34. In this case, if Plaintiff met its burden to produce facts showing that Defendants' proffered reasons for termi-

nation were false, then the case could proceed to trial and the jury could receive a mixed motive instruction consonant with *Cooley*. *See also Wells v. New Cherokee Corp.*, 58 F.3d 233, 238 (6th Cir.1995). However, Plaintiff has not demonstrated that Defendants' proffered reasons are not supported by the evidence, that such reasons did not actually motivate the termination, or that such reasons were insufficient to warrant termination. *Manzer*, 29 F.3d 1078, 1084 (6th Cir.1994). There is no genuine issue of material fact as to the existence of Defendants' legitimate nondiscriminatory reasons for Plaintiff's discharge: accounting irregularities and a conflict of interest that was detrimental to office morale and to the board's confidence in Plaintiff to lead the Credit Union. The Court finds these reasons to be supported by the evidence and to be sufficient to warrant Plaintiff's termination, particularly in light of the earlier warning given to Plaintiff after he forged his wife's signature on a loan application. Consequently, Defendants' Motion for Summary Judgment is well-taken and is granted on Plaintiff's age-related claims under the ADEA.

## B. Plaintiff's ERISA Claim

 ERISA claims are analyzed under similar framework to age discrimination claims. To state a claim under Section 510, the "plaintiff 'must show that an employer had a specific intent to violate ERISA.'" *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir.1992) (*quoting Rush v. United Techs., Otis Elevator Div.*, 930 F.2d 453, 457 (6th Cir.1991)). Where there is not direct evidence of discriminatory intent, plaintiff can state a *prima facie* case by showing the existence of "'(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.'" *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir.

1997). The Sixth Circuit has indicated that a plaintiff must show "a causal link between pension benefits and the adverse employment decision. In order to survive defendants' motion for summary judgment, plaintiff must come forward with evidence from which a reasonable jury could find that the defendants' desire to avoid pension liability was a determining factor in plaintiff's discharge." *Id.*

■■■■ After a plaintiff states a *prima facie* case under Section 510, the defendant can rebut the presumption of impermissible action raised by the *prima facie* case by introducing " 'evidence of a legitimate, nondiscriminatory reason for its challenged action.' " *Humphreys,* 966 F.2d at 1043. This shifts the burden back to the plaintiff to show that the employer's proffered reason was mere pretext. Although the plaintiff "need not show that the employer's sole purpose ... was to interfere with [plaintiff's] entitlement to benefits," *Shahid v. Ford Motor Co.,* 76 F.3d at 1404, 1411 (6th Cir.1996), he must " 'either prove that the interference was a motivating factor in the employer's actions or prove that employer's proffered reason is unworthy of credence.' " *Id.* at 1413 (quoting *Humphreys,* 966 F.2d at 1043). Summary judgment is appropriate if plaintiff fails to establish a *prima facie* case or fails to rebut the employer's proffer of a legitimate, nondiscriminatory reason for its actions. *Smith,* 129 F.3d 857, 865.

■■■■ Plaintiff argues that he has stated a *prima facie* case for violation of Section 510 because of conversations with the board members in which Defendants allegedly expressed concern that his health record caused their benefit plan costs to increase (doc. 28). Defendants argue in response that under *Smith,* Plaintiff must show Defendants had specific intent to violate ERISA, and the record is devoid of any such evidence (doc. 32). Moreover, Defendants argue that once they have es-

tablished a legitimate reason for the discharge, under *Humphreys,* 966 F.2d 1037, 1044, Plaintiff must establish pretext by proving more than just monetary savings for the employer (*Id.*).

The Court finds Defendants' position on Plaintiff's ERISA claim well-taken. Even if Plaintiff could establish his *prima facie* case, he has not shown that Defendants were motivated to fire him by interference with his pension benefits. As explained above, Plaintiff has likewise failed to prove that Defendants' proffered reasons for his discharge are unworthy of credence. For these reasons, summary judgment is appropriate for the Defendants on Plaintiff's ERISA claim.

## CONCLUSION

Having reviewed this matter, the Court finds that Plaintiff has failed to rebut Defendants' proffered legitimate, nondiscriminatory reasons for his termination. As such, his claims for age discrimination under the ADEA fails. Similarly, Plaintiff's claims for discrimination pursuant to ERISA Section 510 are dismissed. As Plaintiff has abandoned the remaining claims in this case for disability discrimination pursuant to the ADA, there is no longer supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to Ohio Revised Code § 41102 and Ohio public policy. The Court therefore dismisses Plaintiff's remaining state law claims without prejudice.

Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment (doc. 25) as to his federal claims, and DISMISSES with same with prejudice, but dismisses without prejudice Plaintiff's remaining state law claims.

SO ORDERED.